IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
ALPHONSO R. TUTTLE,              )
                                 )
        Plaintiff,               )
                                 )
    v.                           )    1:07CV425
                                 )
MICHAEL J. ASTRUE,               )
Commissioner of Social Security, )
                                 )
        Defendant.               )
```

### MEMORANDUM OPINION AND RECOMMENDATION
### OF MAGISTRATE JUDGE ELIASON

Plaintiff Alphonso R. Tuttle seeks judicial review pursuant to 42 U.S.C. § 405(g) of the Commissioner's final decision denying his applications for disability insurance and supplemental security income ("SSI") benefits. The Commissioner's denial decision became final on April 11, 2007, when the Appeals Council concluded there was no basis to review the hearing decision of the Administrative Law Judge ("ALJ"). In this action, the parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

Plaintiff filed applications for disability insurance and SSI benefits[1] on February 11, 2003, alleging disability as of October 8, 1998, due to a cervical fracture and degenerative disease of the cervical spine. A hearing was held before ALJ Joyce Harrison Smith on September 7, 2004 in Greensboro, North Carolina, during which

---

[1] Plaintiff previously filed applications on December 9, 1998 and November 24, 2000. Both applications were denied by decisions of ALJs, and in both cases, the Appeals Council denied Plaintiff's requests for review.

Plaintiff amended his alleged onset of disability date to May 24, 2002. A decision denying Plaintiff's claim was issued on April 29, 2005. Plaintiff filed a request for review, and on April 11, 2007, the Appeals Council found no basis on which to review the ALJ's decision. Plaintiff then filed a request for judicial review in this Court on May 29, 2007.

**Scope of Review**

The scope of review by this Court of the Commissioner's decision denying benefits is limited. Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). The Court must review the entire record to determine whether the Commissioner has applied the correct legal standards and whether the Commissioner's findings are supported by substantial evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Where this is so, the Commissioner's findings are conclusive. The Court may not reweigh conflicting evidence that is substantial in nature and may not try the case de novo. Id. The Court may not make credibility determinations or substitute its judgment for that of the ALJ's. Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005). "Substantial evidence" has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," Richardson v. Perales, 402 U.S. 389 (1971) (citations omitted), or "evidence which . . . consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984) (citations omitted).

-2-

In reaching a decision on Plaintiff's claim, the ALJ followed a five-step analysis set out in the Commissioner's regulations. 20 C.F.R. §§ 404.1520, 416.920(2007). Under the regulations, the ALJ is to consider whether a claimant (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. The burden of persuasion is on the claimant through the fourth step. See Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992). If the claimant reaches the fifth step the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform considering his age, education and work experience. Id.

In this case, the ALJ found that Plaintiff met the disability insured status requirements of the Social Security Act on his amended alleged onset date of disability and remained insured through the date of the decision, April 29, 2005. (Tr. at 14.) At the first step of the sequential evaluation, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since his amended alleged onset date of disability. (Id. at 15.)

The second step in the sequential evaluation process is to determine whether Plaintiff has a severe impairment. A severe impairment is one which, either separately or in combination with another impairment, significantly limits the claimant's physical or mental ability to perform basic work activities. 20 C.F.R.

-3-

Case 1:07-cv-00425-WO-RAE    Document 12    Filed 08/13/08    Page 3 of 12

§§ 404.1520(c), 416.920(c)(2007). At step two, the ALJ found that Plaintiff had the severe impairment of cervical disc disease. (Tr. at 15.) At step three of the sequential evaluation, the ALJ found that Plaintiff did not have an impairment, or combination of impairments, that met or equaled a listing in Appendix 1, Subpart P, Regulation Number 4. (Id.)

The ALJ concluded her evaluation of Plaintiff's residual functional capacity at steps four and five by noting that although Plaintiff no longer retained the residual functional capacity to perform his past relevant work as a furniture repairer, he was able to perform a full range of light work. (Id. at 21.) Based on Plaintiff's age, education and work experience, as well as an exertional capacity for light work, the ALJ found that Medical-Vocational Rule 202.21, Appendix 2, Subpart P, Regulation Number 4 directed a conclusion of "not disabled." (Id. at 22.) The ALJ, therefore, found that Plaintiff is "not disabled" as defined in the Social Security Act. (Id.)

In this action, Plaintiff's sole argument is that the ALJ erred in not deeming Dr. Vincent Paul to be Plaintiff's treating physician and thereby not giving controlling weight to Dr. Paul's opinions. (Docket No. 9, Br. in Supp. of Mot. to Reverse, at 3.) Plaintiff argues that the ALJ based her decision to discount Dr. Paul's medical opinions solely on an erroneous finding that Dr. Paul was not Plaintiff's treating physician. (Id. at 3-6.) The Commissioner argues, however, that the ALJ's decision to discount

Dr. Paul's opinion instead was based on a finding that Dr. Paul's opinion was inconsistent with other medical evidence and not supported by objective medical findings. (Docket No. 11, Mem. in Supp. of Commr's Dec. at 4-5.) The Commissioner's argument is persuasive. The ALJ fairly questioned the nature of Plaintiff's treatment relationship with Dr. Paul, because, at least initially, Dr. Paul was consulted for a second opinion for the purpose of getting a disability rating. (Tr. at 20.) See Worzalla v. Barnhart, 311 F. Supp. 2d 782 (E.D. Wis. 2004)(a physician who sees a patient for the purposes of a report is not a treating source). The ALJ also noted that Dr. Paul constantly and inappropriately issued vocational opinions for which he was unqualified in order to help Plaintiff get disability. (Tr. at 20.) She also assessed Dr. Paul's opinion in light of its inconsistencies with his own treatment records and other record evidence, and determined that it was not entitled to controlling weight. (Tr. at 20-21.) In making these findings, the ALJ was merely discounting Dr. Paul's opinions because they were apparently biased so that it raised the question of whether Dr. Paul was performing as Plaintiff's "disability physician" as opposed to his "treating physician." In other words, the ALJ was merely expressing her severe doubts concerning the opinions issued by Dr. Paul. The ALJ's finding concerning Dr. Paul's opinion is supported by substantial evidence.

It is for the ALJ and not the Court to assess the weight to be given medical opinions. The non-exclusive list of factors to be

used include (1) whether the opinion is based on an examination, (2) the treatment relationship between Plaintiff and the physician, (3) whether any evidence supports the opinion, and (4) the consistency of the opinion with other opinions and the evidence, and (5) whether the physician is a specialist. Johnson v. Barnhart, 434 F.3d 650, 654 (4th Cir. 2005).

There is no rule that a non-examining physician's opinion is entitled to less weight than a treating physician's opinion. In all events, both opinions must be consistent with medical findings and other evidence in the record. Grizzle v. Pickands Mather and Company/Chisolm Mines, 994 F.2d 1093 (4th Cir. 1993). Thus, a more recent non-treating examination may be reason for discounting the opinion of a treating physician. Hunter v. Sullivan, 993 F.2d 31 (4th Cir. 1992). This is so particularly if there is persuasive contrary evidence or Plaintiff has failed to follow treatment plans. Id. Thus, a non-treating physician's opinion may be accorded significant weight when based on the medical records, is supported by objective medical evidence, and is consistent with other medical opinions. Johnson, 434 F.3d at 657.

Although the opinions of treating physicians may be given controlling weight in making a determination of disability, they will not be given such weight if not supported by medically acceptable clinical and laboratory techniques or if they are not consistent with other substantial evidence in the record. Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996). A physician's opinion may

be discounted based on a number of factors, such as a relatively short treatment time, lack of independent evaluation, or undue reliance simply on Plaintiff's statements in forming the opinion, etc. Sterling, 131 F.3d 438. Little weight may be accorded an opinion based mainly on Plaintiff's subjective complaints. Johnson, 434 F.3d at 657; Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Finally, opinions by physicians regarding the ultimate issue of whether a Plaintiff is disabled within the meaning of the Social Security Act are not given controlling weight because the decision on that issue is reserved for the Commissioner alone. 20 C.F.R. § 404.1527(e).

Here, Dr. Paul's opinions are inconsistent with his own treatment notes, as well as with other substantial evidence in the record. Moreover, without any record evidence of further injury or other cause for any worsening of Plaintiff's condition, the limitations ascribed by Dr. Paul became more and more restrictive over time. These limitations appear not to be based on objective clinical evaluations, but instead on Plaintiff's subjective complaints, and moreover, were apparently created upon Plaintiff's request so that he could get disability.

As the ALJ discussed, Plaintiff first saw Dr. Paul not for treatment, but upon a referral from Plaintiff's attorney for a second opinion on Plaintiff's disability rating resulting from a cervical fracture. (Id. at 20.) Plaintiff had previously been treated by Dr. David Ross for the fracture, which was caused by a

motor vehicle accident in October 1997. (See id. at 305-07.) Dr. Ross's notes reflect that Plaintiff consistently reported no or minimal pain, and made no complaints of weakness, numbness or tingling. (Id.) His neurologic testing was normal, as was his range of motion. (Id. at 306.) Dr. Ross characterized Plaintiff's healing from the fracture as uneventful, and assessed an 18% permanent, partial impairment of Plaintiff's spine. (Id.) In January 1998 and again in March 1998, Dr. Ross concluded that Plaintiff could return to regular work without restrictions. (Id.) In April 1998, Plaintiff returned to Dr. Ross complaining that he was in too much pain to continue to work at his previous job. (Id. at 307.) However, Dr. Ross reiterated that he believed that Plaintiff could work without restriction and there was nothing further that he could do for Plaintiff. (Id.)

As noted earlier, Plaintiff then sought a second opinion from Dr. Paul in May 1998. (See id. at 308.) Dr. Paul observed no overt neurologic defects, and found that Plaintiff's upper motor, sensory and reflexes were intact, and that he had full range of motion. (Id.) Dr. Paul concurred with Dr. Ross's assessment of 18% disability, but based on Plaintiff's subjective complaints of pain upon heavy lifting, recommended a formal functional capacity evaluation ("FCE"). (Id. at 309.)

The FCE was performed on July 23, 1998, and the examiner concluded that Plaintiff was able to meet the physical demands of medium level work except that he could not frequently lift more

-8-

than ten pounds from shoulder to overhead. (Id. at 318.) The following month, Plaintiff returned to Dr. Paul, not for treatment, but for a re-evaluation of his work capacity. (Id. at 310.) Dr. Paul concurred with the evaluation that Plaintiff could reasonably lift up to fifty pounds with the limitation of no frequent overhead lifting of more than ten pounds. (Id.) Plaintiff returned to work, but in October 1998, again returned to Dr. Paul complaining of neck pain, which Plaintiff attributed to pushing and pulling at work, and seeking "some information for his employer." (Id. at 311.) Based purely on Plaintiff's subjective complaints of pain,[2] Dr. Paul "clarified" that Plaintiff could do medium level work, but with no pushing and pulling. (Id.)

There is no evidence that Plaintiff sought any further treatment until he returned to see Dr. Paul in March 1999 for a "recheck." (See id. at 312.) Dr. Paul characterized Plaintiff's examination as unchanged and stated that Plaintiff continued to be able to perform "light medium type work." (Id.) Dr. Paul performed another "recheck" in July 1999, after which he maintained the same opinion about Plaintiff's ability to work. (Id. at 313.)

There is no evidence that Plaintiff sought any further treatment for his neck pain for two years; he returned to Dr. Paul in August 2001 complaining of persistent neck pain and advising Dr. Paul that he was seeking disability benefits. (See id. at 108.)

---

[2] Dr. Paul's notes contain no record of any physical examination or any other objective evaluation.

-9-

Again, based purely on Plaintiff's subjective complaints of pain,[3] Dr. Paul stated that it was his belief that Plaintiff had demonstrated persistent pain and discomfort, was "probably not able to do any job that would require medium level labor," and because Plaintiff's education did not qualify him for light duty work, in his opinion, Plaintiff was disabled. (Id.)

Although there is no evidence that Dr. Paul examined Plaintiff again until March 2002, Dr. Paul again revised his opinion concerning Plaintiff's work abilities in October 2001. He reported that in his opinion, Plaintiff should lie down/elevate his legs for two hours a day, stand or walk for up to two hours a day, and sit for one hour. (Id. at 325.) He opined that Plaintiff could lift only up to ten pounds occasionally, and could not bend, squat, crawl, climb or reach above shoulder level, push and pull or perform fine manipulation. (Id.)

In March 2002, Plaintiff returned to Dr. Paul, this time seeking "clarification on his physical evaluation form to get disability. . . ." (Id. at 327.) Dr. Paul reiterated his prior

---

[3] Dr. Paul reported "positive Spurling's into the upper neck, left trapezius and down the arm." (Tr. at 108.) However, a positive Spurling's test is merely the creation of upper extremity pain by extending the neck and rotating the chin toward the affected extremity. The Evaluation of Patients With Neck Pain: Physical Examination, http://www.medscape.com/viewarticle/408540_4. Thus, a positive result will be reported solely based on a patient's subjective claims of pain.

-10-

opinion,[4] stating that he believed Plaintiff could not do medium level work and that he did not think his educational level was sufficient to qualify Plaintiff for work below medium level. (Id.) It does not appear that Plaintiff sought or received any actual treatment during this visit. (Id.)

Plaintiff returned to Dr. Paul for the last time in May 2002,[5] this time to "discuss the fact that his disability did not go through and that he needs stricter restrictions with respect to his lifting capacity." (Id. at 105.) Although Plaintiff's examination remained unchanged since his prior visit, Dr. Paul agreed to yet again amend his opinion concerning Plaintiff's limitations; he now agreed that he "would state" that Plaintiff cannot lift greater than 5 to 6 pounds. (Id.)

The fact that Dr. Paul repeatedly revised his opinion concerning Plaintiff's limitations, without any objective clinical evidence and apparently at Plaintiff's request, is substantial evidence in support of the ALJ's finding discounting these opinions. The ALJ also noted the inconsistencies between Dr. Paul's ever-changing opinions and those of Dr. Ross, as discussed previously, as well as that of Dr. Carlo P. Yuson, an examining consulting physician. (Tr. at 19.) Dr. Yuson found no objective evidence to

---

[4] Dr. Paul stated that he "still [thought]" Plaintiff could lift or carry 11-20 pounds, making it reasonable to believe that his prior limitation of carry no more than ten pounds occasionally was a scrivener's error.

[5] Thus it appears that despite claims of disabling pain, Plaintiff sought treatment only seven times in four years.

-11-

substantiate any neurological abnormality and concluded that Plaintiff exhibited a "tremendous amount of symptom magnification." (<u>Id.</u> at 141.)  The ALJ contrasted Dr. Paul's reliance on Plaintiff's subjective complaints and his ignoring the objective finding with Dr. Yuson's more objective review and deemed Dr. Yuson's opinion to be the far more reliable one.  This was both reasonable and within the ALJ's province.

**IT IS THEREFORE RECOMMENDED** that Plaintiff's motion to reverse the Commissioner's decision (docket no. 8) be denied, that Defendant's motion for judgment on the pleadings (docket no. 10) be granted, and judgment be entered dismissing this action.

_____
**United States Magistrate Judge**

August 12, 2008